On a second appearance of this case, see 158 Fla. 644, 29 So.2d 700, we reversed that portion of a final decree which allowed the appellant $25,240.12 as damages or compensation for the denial by the appellee of the possession, profits and benefits of the Strath Haven, a seasonal hotel situated in the City of Miami Beach, for the period of time from July 18, 1944, until February 5, 1945, on the theory that the rule adopted in the court below for the admeasurement of damages was nothing more than the abatement of the stipulated rents for the period of time involved.
In ascertaining the amount to be paid by the appellee to the appellant as damages for depriving it of the above hotel from July 18, 1944, until February 5, 1945, we laid down the following yardstick as applicable to the controversy: The measure of damages recoverable in this, and similar cases, as approved by our adjudicated cases, is that the lessee can recover from the lessor for the breach of the contract to deliver possession of the leased premises, the difference, if any, between the rent contracted to be paid and the actual rental value of the premises for the time of unlawful detention of the property. Prospective profits from businesses that the lessee expected to conduct in said premises are too remote and speculative — dependent upon too many contingencies — to be permissible of admeasurement of damages.
On the going down of our mandate the learned Chancellor entered an order rereferring the cause to the same Special Master with specific direction to proceed and ascertain the proper amount of damages — applying the yardstick supra to the evidence then in the record — and make a report of the amount the Harvey Corporation should recover of and from the Universal Equipment Co. for depriving it of the possession, profits and benefits of the Strath Haven Hotel from July 18, 1944 until February 5, 1945. It was the Special Master's report that "there is no testimony before me upon which I can assess damages according to and in conformity with *Page 578 
the judgment and opinion of the Supreme Court". Exceptions by counsel for appellant were made to this report of the Special Master, but the Chancellor denied the exceptions and entered an order approving and confirming the report as made. The Harvey Corporation appealed.
Pertinent to the point in controversy is the testimony of the witness Lon Worth Crow (see volume two of the transcript of the record on the previous appeal, pages 309 to 341); also the witness Albert Pollack (transcript, pages 341 to 364); A.J. Plotkin (transcript, pages 365 to 395); S.B. Sampson (volume two, page 396 to volume three, page 407). See testimony of Andrew G. O'Rourke, J. Fred Bruner, Bruno Weil, J.N. Morris, Willard Seligman, Harry I. MaGid, Albert Victorson, L.A. Drillick, Ralph Lachman, Joseph Leibman and the Receiver, Louis Bandel. On the former appeal we held that the abatement of rents in the sum of $25,240.12 for the detention period was the improper formula applicable to the evidence and the aforesaid allowance totally inadequate to compensate for the losses sustained by the appellant for the detention period.
The original bill of complaint in this cause was for an accounting and for damages sustained by the plaintiff for the failure of the defendant to deliver possession of the hotel and described articles of furniture from July 18, 1944, until February 5, 1945. A motion to dismiss the bill of complaint on various grounds was denied by the Chancellor below and on petition here for writ of certiorari under Rule 34 we denied the same under date of October 27, 1944. An answer was filed upon the return of the controversy to the lower court to the bill of complaint for an accounting and for damages for the detention of the Strath Haven Hotel from July 18, 1944, until February 5, 1945, and the cause was referred to a Special Master with directions to take evidence and report his conclusions on both questions of fact and law.
The record discloses some four or five hundred pages of testimony offered by the parties on the issues made by the pleadings. The Special Master found and recommended to the Chancellor that a final decree for the plaintiff below be entered in the total sum of $25,240.12, which report was confirmed and the final decree so entered. On appeal here we affirmed the decree but held that the improper rule for admeasurement of damages was applied and that the rule approved here be applied to the testimony and a proper decree entered in accordance therewith. Some confusion arose in the application of our rule and from an order denying recovery the cause comes here for the third time.
The Special Master's report dated June 6, 1945, in part recited: "A total of fifteen witnesses were brought before your Master to testify on the question of damages for the months of January, February and March, each side producing several of this number. All of the testimony, however, is testimony based, and necessarily so, on speculative profit — that is, how much more money the plaintiff would have derived from the operation of the hotel if the Receiver had not been in possession and this action had not been forced upon the plaintiff".
The lease agreement provided for the payments of rent at the sum of $700 per month, payable on the first day of each month for the months of July, August, September and October of each year; on the first day of November of each the sum of $1,500; on the first day of December of each year the sum of $3,500; on the first day of January of each year the sum of $5,000; on the first day of February of each year the sum of $10,000, — the total amount of rents for the detention period the sum of $22,800.
It appears by the record (page 521) that a bona fide cash offer was made to the receiver for the over-all rental of the Strath Haven Hotel in the sum of $92,000 for the year beginning November 1, 1944, and ending July 17, 1945. The stipulated rental fixed by the terms of the lease for the same period was the sum of $31,000. It is argued that this offer fixed the actual net value of the lease for the period at the sum of approximately $60,000 and the *Page 579 
Chancellor below erred in not entering a decree for the appellant in said amount.
It appears by the record that Lon Worth Crow qualified as an expert witness as to the value of leasehold estates covering hotels in the Miami Beach area. The qualification, experience and testimony of the witness is in the record. (Tr. 309 to 341). The witness, in reaching the actual value of the Strath Haven Hotel for the detention period, adopted three rules. In the application of rule number one he fixed the approximate value at $57,500; in his application of rule number two he fixed the value at approximately $52,500; and under rule number three the value was fixed at the approximate sum of $60,000. The mesne average of the three rules, supra, would be the sum of approximately $56,000. Other witnesses testifying in the cause endorsed or approved each of the rules as testified to by Lon Worth Crow. Emphasis of counsel has been placed on the tortious detention of the hotel and therefore punitive damages should be assessed additional to compensatory damages.
The receiver of the Strath Haven for the detention period was a member of the Miami bar and by his own admission was not a successful hotel operator. He operated it prior to OPA ceilings being placed on each room and rented rooms frequently at a sum less than their value. The Receiver's power to act in many instances in the management of the property had to be approved by a court order, and especially was this true in expending money to obtain guests. He was without power to make contracts with tenants for the use of portions of the property. The Receiver was so handicapped that the best business results could not be obtained.
Many practical hotel operators about the Beach testified and expressed opinions as to the profits in the operation of the Strath Haven for the detention period. They testified that the hotel business was not good on the Beach from July 1, 1944, until February 5, 1945, but expressed the view that the hotel could make a profit if 72% of the rooms of the hotel were filled in either of the months the hotel was detained. The Receiver reported to the court and the parties the offer of $92,000 for a lease on the Strath Haven from November, 1944, until July, 1945, when the parties refused the offer.
The sum of $25,240.13 decreed to be due the plaintiff-appellant on the former appeals consisted of $10,050 as damages for the months prior to January 1, 1945 and the further sum of $15,190.12 from January 1, 1945, until February 5, 1945, being the amount received, less 25% thereof plus the $7,600 as rental on the cigar concession. The rules of computation as applied by the witness, Lon Worth Crow, and approved by other witnesses, may not be a perfect formula to observe, but when the facts as a whole are reviewed substantial justice will be administered in applying one of the rules.
It is our conclusion that the sum of $52,500 is the actual value of the leasehold for the detention period — less the rents reserved by the lease for the detention period in the sum of $22,800 — leaving the amount sustained in damages in the total sum of $29,700, which sum should bear interest at the rate of 6% per annum after February 5, 1945.
The decree appealed from is reversed with directions to enter a decree as damages in the sum of $29,700, with interest at 6% from February 5, 1945, to date of entry thereof.
It is so ordered.
ADAMS, C.J., HOBSON, J., and TAYLOR, Associate Justice, concur. *Page 580